An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-977

Filed 3 September 2025

Durham County, No. 20CVD000860-310

ARMAGENE ELLIS-SMITH (MACLIN), Plaintiff,

v.

BARRINGTON SMITH, et al, Defendants.

Appeal by plaintiff from memorandums of order entered 9 April 2024 by Judge Dorothy Hairston Mitchell in District Court, Durham County. Heard in the Court of Appeals 22 April 2025.

*Armagene Ellis-Smith, pro se, plaintiff-appellant.*

*No brief filed for defendant-appellee.*

STROUD, Judge.

Plaintiff-Wife purports to appeal three orders: the Equitable Distribution Order entered 20 September 2022; an Order for Contempt and Order denying Wife's "T.R 60(B) Motion to Correct Errors" entered on 22 November 2023; and a "Rule 70 Court Order," which also addressed a "Motion to Reconsider via Rule 59" entered on 9 April 2024. Because Wife failed to appeal the trial court's Order granting equitable

distribution or the Order holding Wife in contempt of the Equitable Distribution Order, this Court has no appellate jurisdiction to consider her arguments regarding those Orders. Wife's "Notice of Appeal" filed on 12 April 2024 addressed only the trial court's Memorandum of Order regarding a Rule 70 Motion entered on 9 April 2024, but the Memorandum is not a final, appealable order. Wife has not argued any impairment of a substantial right requiring interlocutory review, so Wife's appeal is properly dismissed.

## I.    Factual and Procedural Background

Because we dismiss Wife's appeal for lack of appellate jurisdiction, we need not lay out the facts of this case in great detail. In brief summary, Wife and Defendant-Husband were married in 2002 and separated in 2020. Wife brought a claim for equitable distribution, and the trial court entered an Equitable Distribution Order on 20 September 2022 ("Distribution Order").[1] In the Distribution Order, the trial court made extensive findings of fact regarding the parties' marital property and distributional factors. The trial court concluded "unequal division of the marital estate is equitable[,]" and that "[Wife] shall retain the former marital residence[.]" However, the Distribution Order also ordered Wife to refinance the residence, to remove Husband's name from the mortgage, and to pay Husband a distributive award of "Seventy-Thousand Dollars ($70,000) within one hundred eighty days" after entry

---

[1] Two other defendants were included in the case caption as stated on the Distribution Order: Immanuel Apostolic Holiness Church, Inc., and Christine M. Draggon.

of the Distribution Order. If Wife was "unable to refinance the mortgage to remove [Husband]'s name[,]" the residence was then to be sold and proceeds divided fifty-one percent to Wife and forty-nine percent to Husband. Wife did not refinance the home as required by the Distribution Order.

On 14 September 2023, Husband filed a motion for order to show cause and a motion for civil contempt. In a Contempt Order filed 22 November 2023, the trial court found Wife had "willful[ly]" violated the Distribution Order by failing to refinance the former marital residence to remove Husband's name from the mortgage. Wife was held in civil contempt for her willful failure to comply with the Distribution Order. Wife was ordered to serve 48 hours of imprisonment for her contempt, but she could purge herself of this punishment by paying Husband $4,500.00 within six months of entry of the Contempt Order.[2] Wife still did not refinance the home and she did not pay the $4,500.00 as directed by the Contempt Order.

On 1 February 2024, the trial court held a hearing regarding Wife's failure to pay the $4,500.00 purge payment. The trial court discussed several pending motions in the case with Husband's counsel and Wife. Ultimately the trial court decided to

---

[2] Although the payment was referred to as a "purge" payment, the Contempt Order did not order Wife's immediate imprisonment for contempt, allowing Wife effectively to avoid both paying the purge payment and serving any term of imprisonment.

schedule all pending motions[3] to be heard at the same time. The court manager advised the trial court had time available for the hearing on 9 April 2024 at 9:00 am and the hearing was set for that date and time.

The hearing on the pending motions was held on 9 April 2024. Wife filed her first Notice of Appeal on 9 April 2024 at 3:10 pm. This Notice does not clearly identify any specific order to be appealed, but it makes general allegations about the "[m]arital [e]state," "post-separation payments on [m]arital [d]ebt[,]" and various rulings by the trial court. It also refers to two rulings the trial court apparently made during the hearing still in progress when this first Notice of Appeal was filed: "the [c]ourt denied [Wife]'s Motion to Correct Errors on April 9, 2024, via the hearing that occurred[;]" and "the [c]ourt denied [Wife]'s T.R. 59 Motion [t]o Reconsider Contempt and has ordered . . . [Wife] to pay money and Attorney Fees." This Notice also alleges that the Court of Appeals "has jurisdiction to hear the Appeals because the [Wife] is being order [sic] to pay money and is facing jail time."

Plaintiff filed her second Notice of Appeal on 12 April 2024 and this Notice appears to address the trial court's Memorandum of Order entered at 5:16 pm on 9 April 2024, although it does not specifically refer to the Memorandum. The portion of transcript[4] from the hearing on 9 April 2024 included in Wife's record on appeal

---

[3] During the hearing, several motions were mentioned – a Rule 60(b) motion, a "motion to reconsider the contempt[,]" and a "motion for sanctions and attorney fees[.]"

[4] According to the transcript, at the hearing held on 9 April 2024, the trial court considered a Rule 70 motion and "motions for Gag Order, Sanctions, and Attorney's fees."

notes that it is a "[p]artial recording started at 3:51 p.m. on Tuesday, April 9, 2024."[5] The transcript reveals Wife had returned to the trial court for the hearing in progress "30 minutes late" after the break and handed her first Notice of Appeal (filed at 3:10 pm that same day) to Husband's attorney. She claimed she was late to court because she didn't "feel well." As the hearing resumed after the break, the trial court stated "*I already granted the Rule 70 motion*[ ]" and asked the parties if they had any suggestions for an attorney they would like appointed "as the third party to execute the documents[.]" (Emphasis added.) Husband's counsel suggested two potential attorneys; Wife had no suggestions but stated that "based off . . . what [the trial court] . . . shared before the break, with regard to this being part of the equitable distribution . . . I have went ahead and filed notice of appeal." Wife insisted the equitable distribution was "stayed" because of her appeal and that the Court of Appeals will "actually hear my case law[ ]" and "actually hear my testimony." The trial court reminded Wife it would be entering an order on the Rule 70 motion. Since Wife had no suggestion for an attorney to be appointed, the trial court would appoint Mr. Eric Williams, one of the attorneys suggested by Husband. The trial court stated

---

[5] Based on the portion of the transcript provided by Wife, it is apparent she omitted the portion of the hearing addressing the Rule 70 motion. Wife's failure to include the full transcript of the hearing addressing the motion and order which are the subject of her arguments on appeal is another failure to comply with the appellate rules. *See* N.C. R. App. P. 9(a)(1)(e) ("The printed record in civil actions and special proceedings shall contain: . . . so much of the litigation, set out in the form provided in Rule 9(c)(1), as is necessary for an understanding of all issues presented on appeal, or a statement specifying that the transcript of proceedings is being filed pursuant to Rule 9(c)(2), or designating portions of the transcript to be so filed[.]").

it would prepare a "memorandum of order" so Mr. Williams would be able to begin his work and then proceeded to hear the other motions set for hearing.

The trial court entered a handwritten Memorandum of Order which was filed at 5:16 pm on 9 April 2024. The Memorandum of Order indicated the matter was brought on Husband's motion under Rule 70 of the North Carolina Rules of Civil Procedure, though this motion was not included in our record on appeal as prepared and submitted by Wife. The trial court stated the Rule 70 motion was granted and Wife was divested of title to the former marital home and title would be transferred to Husband. The Memorandum of Order: granted Husband full authority to "take action necessary" in preparing the home for listing; determined Wife to still be in civil contempt; and ordered the cost of all necessary repairs and the $4,500.00 from the Contempt Order be deducted from Wife's portion of the sale's proceeds and credited to Husband. The Memorandum also stated "[a] formal judgment/order reflecting the above terms will be prepared by [sic] and submitted no later than May 10, 2024 for signature by a judge assigned to hold court in this district."[6]

## II. Appellate Jurisdiction

Wife's second Notice of Appeal states that she is appealing from a "final

---

[6] The trial court prepared this Memorandum of Order on the Form AOC-CV-2020, new 4/97, entitled "Memorandum of Judgment/Order." The pre-printed language of this form states that the "parties to this lawsuit have reached an agreement" to the terms stated on the Memorandum, but the trial court crossed out the language of the form regarding consent of the parties. Based upon the terms of the Memorandum and the transcript, it is clear the trial court used this form to write down a summary of its ruling on the Rule 70 motion and Defendant's counsel was to prepare the formal order for entry on 10 May 2024.

appealable order[,]" but the Memorandum of Order is not a final order.  Wife's brief

states that "[t]here are three Orders that are under appeal," and she identifies these

as the Distribution Order entered 20 September 2020; the Contempt Order entered

22 November 2023; and the Memorandum of Order entered 9 April 2024.  Since it

appears that Wife did not file a proper or timely notice of appeal from the Distribution

Order or the Contempt Order, and even assuming her second Notice of Appeal as to

the Memorandum regarding the Rule 70 motion was a proper notice of appeal, the

Memorandum of Order is an interlocutory order, so we must first address appellate

jurisdiction.

> Although the parties have not raised this issue, whether an appeal is interlocutory presents a jurisdictional issue, and this Court has an obligation to address the issue *sua sponte*. An interlocutory order is generally not immediately appealable.

> A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court. An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.

*Duval v. OM Hosp., LLC*, 186 N.C. App. 390, 392, 651 S.E.2d 261, 263 (2007)

(citations, quotation marks, and brackets omitted).

Wife presents four arguments on appeal, but her arguments all address the

trial court's rulings in the Distribution Order and the Contempt Order.  Contrary to

the assertion in her brief, Wife did not appeal these Orders.  Even if the first Notice

of Appeal filed on 9 April 2024 were clearly a notice of appeal from those Orders – and it does not identify either Order – it was not timely filed since the Distribution Order was entered almost two years earlier and the Contempt Order was entered about five months before the first Notice of Appeal was filed. We also note the equitable distribution case included two additional defendants, Immanuel Apostolic Holiness Church, Inc., and Christine M. Draggon, but our record has no indication that either of these defendants were served with any document in this matter, including the Distribution Order or Wife's Notice of Appeal. These are all jurisdictional defects requiring dismissal. *See Dogwood Dev. and Mgmt. Co., LLC v. White Oak Transp. Co., Inc.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008) ("A jurisdictional default . . . precludes the appellate court from acting in any manner other than to dismiss the appeal." (citations omitted)). This Court has no appellate jurisdiction to address any argument about the Distribution Order or the Contempt Order because they were not timely appealed.

Under Rule 3 of our North Carolina Rules of Appellate Procedure, an appeal in a civil case is generally timely when either party files and serves notice of appeal "within thirty days after entry of judgment" or "within thirty days after service" if service was not made "within the three-day period prescribed by Rule 58 of the Rules of Civil Procedure[.]" N.C. R. App. P. 3(c). Because Wife did not file or serve upon all defendants a proper written notice of appeal as to the Distribution Order or the Contempt Order, timely or otherwise, this Court does not have appellate jurisdiction

to consider Wife's arguments as to these orders. *See Booth v. Utica Mut. Ins. Co.*, 308 N.C. 187, 189, 301 S.E.2d 98, 99-100 (1983) (per curiam) ("The record on appeal clearly shows that the plaintiff-appellant failed to give timely notice of appeal. Failure to give timely notice of appeal in compliance with . . . Rule 3 of the North Carolina Rules of Appellate Procedure is jurisdictional, and an untimely attempt to appeal must be dismissed." (citations omitted)).

As to the appeal of the Memorandum of Order, Wife filed the second Notice of Appeal from "an [o]rder . . . that was heard and entered on April 9, 2024[ ]" as a "result of a peremptory hearing and a Rule 70 Motion that was decided in [Husband's] favor." This second Notice of Appeal apparently addresses the Memorandum of Order, which by its own terms is an interlocutory order. The Memorandum of Order was not a full ruling on the Rule 70 motion or other matters before the trial court on 9 April 2024, as the trial court explained during its partial rendition of the ruling in the incomplete transcript provided to this Court. The trial court noted in the Memorandum it would enter a formal order to be prepared by Husband's counsel on 10 May 2024. This Court discourages appeals from orders not yet final in the interest of "eliminat[ing] . . . unnecessary delay and expense" of continued litigation. *City of Raleigh v. Edwards*, 234 N.C. 528, 529, 67 S.E.2d 669, 671 (1951) ("Appellate procedure is designed to eliminate the unnecessary delay and expense of repeated fragmentary appeals, and to present the whole case for determination in a single appeal from the final judgment."). However, Wife proceeded with her appeal before that formal order could

be entered, and based upon the record before this Court, that formal order had not been entered by the time the record was filed on 7 November 2024.

Wife's brief simply asserts that she is appealing from a "final order" and she did not make any argument that she has a right to an interlocutory appeal.

> A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court. An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.

*Veazey v. City of Durham*, 231 N.C. 354, 361-62, 57 S.E.2d 377, 381 (1950) (citations omitted). The Memorandum of Order explicitly left the case open for "further action by the trial court" and it did not "settle and determine the entire controversy[,]" even as to the Rule 70 motion. *Id.*

Further, Wife is not entitled to an immediate interlocutory appeal of the trial court's Memorandum of Order as she has made no argument the Order implicates a substantial right. "A substantial right is one which will clearly be lost or irremediably adversely affected if the order is not reviewable before final judgment." *McConnell v. McConnell*, 151 N.C. App. 622, 625, 566 S.E.2d 801, 804 (2002) (citation and quotation marks omitted). The burden is on the appellant to establish that "the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (citations and quotation marks

omitted).

### III. Conclusion

We are mindful of Wife's *pro se* status, but we cannot overlook the fact she has failed to present any cognizable issues on appeal to this Court. Further, we cannot ignore the gross violations of our appellate rules, which failed to invoke our jurisdiction and have substantially impaired our ability to review this appeal. We do not have appellate jurisdiction to consider any of the arguments and issues presented by Wife. Her purported appeal is dismissed.

DISMISSED.

Judges TYSON and HAMPSON concur.

Report per Rule 30(e).